**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02637-RM

RAUL A. MORENO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Raul A. Moreno's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

    Defendant provided the Court with the administrative record. (ECF Nos. 14; 14-1; 14-2; 14-3; 14-4; 14-5; 14-6; 14-7; 14-8.) The matter is fully briefed and ripe for adjudication. (ECF Nos. 17; 18; 19.)

    For the reasons set forth below, the Court vacates the denial of Plaintiff's applications and remands for proceedings consistent with this Order.

## I.   BACKGROUND

At issue in this matter[1], Plaintiff applied for DIB and SSI in September 2011, alleging he was disabled as of June 26, 2009, due to the following conditions that limit his ability to work: asthma, hip and back pain, allergies, arthritis of the knees, sleep apnea, nerve problems, depression, left leg sciatica (Admin. R. ("Tr.") 137-45, 28, 160.)  Plaintiff, during a hearing before the ALJ, amended his alleged onset date to November 11, 2010.  (Tr. 27-28.)  After Plaintiff's applications were initially denied (Tr. 87-100), Plaintiff requested a hearing before an ALJ (Tr. 101).  The ALJ denied Plaintiff's applications.  (Tr. 7-23.)  Plaintiff requested review of the ALJ's decision (Tr. 6) and, in July 2014, the Appeals Council denied such review (Tr. 1-5).  Plaintiff timely requested judicial review before the Court.

### A.   Background and Relevant Medical Evidence[2]

Plaintiff was born in July 1956.  (Tr. 139.)  Plaintiff was 54 years old on his amended alleged onset of disability and 56 years old on the date of the ALJ's January 2013 decision.  (*See* Tr. 22-23, 139.)  Plaintiff completed high school.  (Tr. 161.)  Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes:  quality control technician and computerized numerical control ("CNC") operator.  (Tr. 41.)

Plaintiff claims he is disabled due to a combination of physical and mental health impairments.  (Tr. 137-45, 28, 160.)  In this appeal, Plaintiff raises issues only with regard to his physical impairments.  (ECF No. 17 at 2 n.3.)

In 2008 and 2009, Plaintiff went to Peak Vista Community Health Center for treatment of groin pain and upper respiratory complaints.  (Tr. 285-92.)

---

[1] Plaintiff previously applied for DIB; such application was denied by the administrative agency.  (Tr. 46-61.)
[2] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

From September 2009 through May 2010, Plaintiff received medical treatment for his asthma, sleep apnea, cold symptoms, and allergies. (Tr. 215-50, 259-65.) While Plaintiff was incarcerated with the Colorado Department of Corrections, a hip x-ray was normal (Tr. 260); knee x-rays showed degenerative narrowing in both knees (Tr. 260); and a chest x-ray showed hyperaeration of the lungs with no acute infiltrates (Tr. 263).

Subsequent to Plaintiff's incarceration, he received medical treatment for hives and asthma at Family Medical Clinics. (Tr. 321-31.) In September 2010, treatment notes from a Peak Vista physical examination showed regular respirations, normal cardiovascular function, normal musculoskeletal strength, normal tone, normal gait, normal motor function, and full reflexes. (Tr. 280-84.)

In November 2010, Plaintiff, at Peak Vista, received an orthopedic evaluation related to his knee pain and received a diagnosis of degenerative arthritis in both knees. (Tr. 307, *see also* Tr. 293-96.)

In 2011, Plaintiff went to the Family Medical Clinic on multiple occasions for complaints related to cold symptoms, headaches, sinus pressure, fever, sciatica, allergies, and asthma treatment. (Tr. 325-28.) In November 2011, a doctor noted that Plaintiff was not a candidate for knee surgery due to his morbid obesity and that Plaintiff should lose weight to alleviate knee pain. (Tr. 329.) In 2012, Plaintiff was diagnosed with left leg sciatica. (Tr. 359-63.)

In November 2011, Ryan Otten, M.D., performed a consultative examination of Plaintiff in connection with Plaintiff's disability applications. (Tr. 341-51.) Dr. Otten noted no significant hip abnormalities based on an x-ray (Tr. 341); right knee arthritis based on an x-ray (Tr. 341-42); and moderately severe airway obstruction based on a spirometry report (Tr. 343.) Dr. Otten diagnosed chronic dyspnea with a history of asthma; a moderately obstructed airway;

obstructive sleep apnea; bilateral knee osteoarthritis; chronic low back pain; and morbid obesity. (Tr. 351.) Dr. Otten opined that, during a normal eight-hour workday, Plaintiff could stand and walk one to two hours; bend, squat, crouch, stoop, and kneel for one or two hours; should have a cane with him at all times (despite noting that Plaintiff did not have a cane present with him at the examination (Tr. 349)); could lift or carry fewer than 15 pounds frequently and fewer than 30 pounds occasionally; could push and pull two hours total; could climb stairs for no more than one hour; should never climb ladders; and should only work in an environment with good air quality. (Tr. 351.)

Plaintiff and Gerald W. Riley completed a "work history report." (Tr. 200-08.) In pertinent part, as a quality control technician, Plaintiff reported that he walked 2 hours a day in this position and stood 6 hours a day. (Tr. 202.) Plaintiff further reported that he "would lift and carry parts of the machine for up to a mile to be further reviewed." (Tr. 202.) Plaintiff reported that the heaviest weight he lifted was 100 pounds or more. (Tr. 202.) Plaintiff reported that he frequently, meaning 1/3 to 2/3 of the workday, lifted 10 pounds. (Tr. 202.)

At the hearing, Plaintiff testified he had asthma, shortness of breath, allergies, sciatica in his leg, and hip, knee and back pain. (Tr. 28-29.) Plaintiff, with respect to his past work, testified he worked for the same company in two different positions. (Tr. 35-36.) First, Plaintiff worked in the company's manufacturing facility for 13 years where he operated machines as a production machine tender. (Tr. 35-36.) Plaintiff testified that as a production machine tender, he lifted 20 to 25 pounds routinely and stood and walked a good amount. (Tr. 36-37.) Plaintiff testified that at some point, he became unable to work as a production machine tender because the chemicals used in the production process caused breathing problems so he moved to a quality control position where he inspected parts. (Tr. 37-38.) Plaintiff testified that as a quality control

technician, he lifted between 10 and 15 pounds with some standing and walking. (Tr. 38.) Plaintiff testified that even though he moved to this job to reduce his exposure to chemical fumes, he could still smell the fumes coming from the warehouse, which "affected" him. (Tr. 39.)

      **B.**      **The ALJ's Decision**

On January 10, 2013, ALJ William Musseman issued his decision in this matter denying Plaintiff DIB and SSI. (Tr. 7-23.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 12-23.) ALJ Musseman found that Plaintiff has met the disability insured status of the Act through December 31, 2011 and has not engaged in substantial gainful activity since November 11, 2010, the amended, alleged onset date. (Tr. 12.) ALJ Musseman found that Plaintiff has the following severe impairments: "asthma; degenerative joint disease of the bilateral knees; and obesity." (Tr. 13-15.) ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 3.00ff, 1.02A, 1.00(Q), and 3.00(I). (Tr. 15.) ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows: to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b). Such work involves only occasional squatting and kneeling, occasional operation of foot/leg controls, and minimal exposure to dust, chemicals, and fumes, the latter defined as not requiring a clean room, but at least a clean environment (i.e., no outside work)." (Tr. 15-21.) ALJ Musseman found that Plaintiff has past relevant work (specifically as a quality control technician) and that he is able to perform such past relevant work as actually performed. (Tr. 21.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Musseman's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman further found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including: small products assembler, cashier II, and electronics worker. (Tr. 22-23.)

The ALJ further noted that Plaintiff's age category changed during the relevant period. (Tr. 23.)

ALJ Musseman concluded that Plaintiff was not disabled. (Tr. 23.)

### C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 6.) On July 22, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II.   LEGAL STANDARDS[3]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract

---

[3] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the

8

past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

### III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration, that:  (1) the ALJ erred in determining that Plaintiff could perform his past relevant work as a quality control technician as he actually performed it (ECF No. 17 at 6-11); and (2) the ALJ erred in his RFC determination (ECF No. 17 at 11-17).

Because the Court finds the ALJ committed legal error due to his failure to discuss all probative evidence regarding Plaintiff's past relevant work as a quality control technician (as he actually performed it), the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, a court properly declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").  The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was

considered. The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

### A. The ALJ Erred in Failing to Discuss All Evidence Related to Plaintiff's Past Relevant Work as a Quality Control Technician

Step four of the sequential analysis is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), *see* SSR 86-8, 1986 WL 68636, *5 (1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). The failure to make either of these findings constitutes error. *Villalobos v. Colvin*, 544 F. App'x 793, 797 (10th Cir. 2013) (unpublished) (reversing and remanding with instructions to make findings on the demands of the past relevant work and to assess Villalobos' ability to perform his past relevant work). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey,* 92 F.3d at 1023. "At each of these phases, the ALJ must make specific findings." *Id*. As to phase one, "[i]n determining a claimant's physical abilities, the ALJ should 'first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" *Id*. (quoting 20 C.F.R. § 404.1545(b)).

Sections 404.1520(f) of the regulations states as follows:

Your impairment must prevent you from doing past relevant work [("PRW")]. If we cannot make a determination at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment,

10

> which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. See paragraph (h) of this section and § 404.1560(b). If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(f). "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386, *3 (1982).

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits [the claimant's] ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." SSR 82-62, 1982 WL 31386, at *3.

"The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386, at *3. "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." SSR 82-62, 1982 WL 31386, at *3.

"The explanation of the [disability] decision must describe the weight attributed to the pertinent medical and *nonmedical factors* in the case and *reconcile any significant inconsistencies*." SSR 82-62, 1982 WL 31386, at *4 (emphasis added).

In this matter, Plaintiff challenges the ALJ's determination that Plaintiff could perform his past relevant work as a quality control technician as he actually performed it (Tr. 21). (ECF No. 17 at 6-11.) The ALJ determined that Plaintiff's RFC was a "full range of light, non-exertional limitations of only occasional squatting, kneeling, occasional foot or leg controls, minimal dust, chemicals and fumes" which the ALJ further clarified as "not requiring a clean room but at least a clean environment," *i.e.*, not outside. (Tr. 41-42.) The vocational expert testified that it appears as though Plaintiff's past relevant work as a quality control technician, as he actually performed it, would be in line with this RFC. (Tr. 42.) The ALJ relied upon this testimony in finding that Plaintiff could perform his past relevant work as a quality control technician as he actually performed it. (Tr. 21.)

At hearing in this matter, Plaintiff testified that as a quality control technician the heaviest he would lift would be around fifteen pounds. (Tr. 38.) In his work history report, Plaintiff reported that as a quality control technician, the heaviest he would lift would be 100 pounds or more. (Tr. 202.) At hearing in this matter, Plaintiff testified that he did not sit eight hours a day in this job but rather would "have to go and retrieve a certain indicator to use for whatever part [he] was checking." (Tr. 38.) In his work history report, Plaintiff reported that as a quality control technician he "would lift and carry parts of the machine for up to a mile to be further reviewed" and he would walk 2 hours a day and stand 6 hours a day. (Tr. 202.)

The ALJ failed to reconcile the inconsistencies between Plaintiff's hearing testimony and his work report, *i.e.*, the heaviest weight Plaintiff lifted and the amount of walking involved in

his past relevant work. (*See generally* Tr. 15-23.) Thus, the ALJ's RFC determination fails to comport with Defendant's policy statement, SSR 82-62, 1982 WL 31386, at *4, in that the ALJ failed to address Plaintiff's work requirements as he actually performed it. "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton,* 79 F.3d at 1009-10). Plaintiff's 100 pound lifting would be outside a "light" work limitation. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, *5-6 (1983); SSR 83-14, 1983 WL 31254, *4 (1983). While the Court may not reweigh the evidence, the Court must assure itself "that the ALJ gave the relevant material due consideration." *Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) (citation omitted). And, in this instance, it is not clear that the ALJ gave due consideration to Plaintiff's work report (Tr. 202).

At step four, "[w]hile the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty 'of inquiry and factual development.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (quotation omitted). "The ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id*. (quotation omitted). The ALJ failed to develop the record adequately with respect to Plaintiff's strength (lifting) and endurance (walking) requirements.

Defendant argues that Plaintiff "misrepresents the physical demands of his past work as a quality control technician as he performed it." (ECF No. 18 at 16.) Nowhere, however, does the ALJ state that he determined Plaintiff was misrepresenting the physical demands of his past work as a quality control technician as he performed it. (*See generally* Tr. 7-23.) The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v.*

*Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "'Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id*. at 1084-85 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance and that judicial review is limited to the reasons stated in the ALJ's decision).

IV.     CONCLUSION

Based on the foregoing, the Court:

(1)     VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2)     REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 11th day of April, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge